UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| KIMBERLY REDDICK FRIESE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV622-083 |
| ) | |
| KILOLO KIJAKAZI, ) | |
| *Acting Commissioner of* ) | |
| *Social Security*, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Kimberly Reddick Friese seeks judicial review of the Social Security Administration's denial of her application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB).

### I.   GOVERNING STANDARDS

In social security cases, courts

> . . . review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Id.* at 1178 (internal quotations and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates

1

against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). *see also Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) ("Substantial evidence . . . is 'more than a mere scintilla.' [Cit.] It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (citations omitted)).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ applies

> . . . a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC[1] to perform her

---

[1] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can

> past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience. An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a [Vocational Expert (VE)].

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x. 878, 879 (11th Cir. 2015) (footnote added).

## II.   BACKGROUND

Friese, who was born on April 25, 1982, was 36 years old when she applied for SSI and DIB and 38 years old at the time of the ALJ's decision. Tr. 7, 228, 237. She alleges disability beginning on February 1, 2020.[2] Tr. 11. Friese has two associate degrees: one as a medical assistant and one as a surgical technician. Tr. 47 (hearing transcript). She previously worked as a surgery scheduler and in a composite role as a surgical technician and medical records clerk. Tr. 50-51 (hearing transcript). After a hearing, tr. 40-77 (hearing transcript), the ALJ issued an unfavorable decision, tr. 7-32.

---

adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

[2] Friese initially alleged an onset date of December 20, 2018, but later amended. *See* tr. 11.

3

The ALJ found that Friese's diabetes, degenerative changes of the sacroiliac joints, bipolar disorder, obsessive compulsive disorder, generalized anxiety disorder, and obesity constituted severe impairments, but that none of her impairments, alone or in combination, met or medically equaled a Listing. Tr. 13-22. The ALJ then found that Friese retained the RFC for light work as defined in 20 CFR 404.1567(b) and 416.967(b) except:

> push and pull up to 10 pounds occasionally; stand and walk up to six of eight hours and sit up to six of eight hours with normal breaks; occasionally climb ramps and stairs but no ladders or scaffolds; frequently balance; occasionally stoop, kneel, crouch, but never crawl; occasional overhead reaching and use of foot controls; frequently handle, finger, and feel; no concentrated exposures to heat, along with no unprotected heights and other hazards; work is limited to simple, routine work; limited to work involving simple, work-related decisions with few, if any workplace changes; and occasional interaction with coworkers, supervision, and the public.

Tr. 22, *see also* tr.22-30. Friese, he determined, could not perform her past relevant work, but could perform jobs that exist in significant numbers in the national economy. Tr. 30-32. Specifically, the ALJ found that that Friese "would be able to perform the requirements of" (1) inspector and hand packager, (2) inspector, and (3) gluer. Tr. at 31. Therefore, she was found not disabled. Tr. 32. The Appeals Council

denied review. Tr. 1-6. Friese filed the instant action seeking judicial review of the ALJ's decision. *See* doc. 1.

## III.   ANALYSIS

Friese makes two arguments. First, she argues the ALJ failed to consider the entirety of the VE's testimony, resulting in a determination that was not supported by substantial evidence. Doc. 12 at 6-8. Second, Friese argues the ALJ erred in failing to classify her previous right calcaneus fracture as a severe impairment. Doc. 12 at 8-9.

As to her first argument, Plaintiff points out that the VE testified that a hypothetical person with Friese's RFC could not perform the jobs of inspector and hand packager, inspector, or gluer because an orientation or training period would require "frequent" interaction with co-workers and supervisors rather than "occasional interaction." *See* doc. 12 at 7-8; <u>see also</u> tr. 73, 75-76 (hearing transcript). Therefore, Friese argues, the ALJ's unexplained acceptance of his prior testimony, that Friese *could* perform the jobs of inspector and hand packager, inspector, or gluer, was not supported by substantial evidence. *See* doc. 12 at 6-8: *see also* tr. 31-32.

5

Initially, the VE testified that someone with Friese's RFC, who could only tolerate occasional interaction with coworkers, supervisors, and the public, could work a number of entry-level, SVP2 light jobs, including inspector and hand packager, inspector, and gluer:

> Q    . . . I want you to assume an individual of the same age, education level, and past work as the claimant, who can lift and carry up to 20 pounds occasionally, 10 pounds frequently, can push and pull up to 10 pounds occasionally, stand or walk up to six of eight hours, sit up to six of eight hours with the normal breaks, can occasional stair and ramp climb, but no ladders or scaffolds, frequent balance, occasional stoop, kneel, crouch, but never crawl, no concentrated exposures to heat, no unprotected heights or hazards, occasional overhead reaching and use of foot controls, frequent handle, finger, and feel.  The work is limited to simple, routine work.  The work would involve simple, work-related decisions with few, if any, workplace changes, and *they can have occasional interactions with coworkers, supervision, and the public*.
>
>  . . .
>
> Are there jobs in the national economy that would fit the hypothetical, and if so, if you could provide three examples?
>
> A    Yes, Your Honor.  There are a good many entry-level, SVP2, light job titles consistent with the hypothetical, and specific examples would be . . . [i]nspector and hand packager, SVP2, light.  The <u>DOT</u> code is 559.687-074.  . . . Another example would be a job such as a different kind of inspector.  This inspector has the <u>DOT</u> code of 529.687-114.  . . . Another

example would be a job such as a gluer job, g-l-u-e-r. The <u>DOT</u> code is 795.687-014. . . .

Tr. 71-72 (hearing transcript) (emphasis added). The VE later confirmed for the ALJ that his testimony regarding what work a person with Friese's RFC could perform was consistent with the DOT and covered "the social deficits." Tr. 74-75 (hearing transcript).

However, the VE changed his testimony after Plaintiff's counsel prompted him to more directly consider how not being able to tolerate more than occasional contact with coworkers or supervisors would affect a person's ability to perform the identified jobs:

> Q . . . [G]oing back to the jobs that you identified in response to hypotheticals 1 and 2, let me ask you, assume that that person cannot tolerate more than occasional contact with supervisors and coworkers, in the first 30 days of employment, which is when they go through orientation training and gain proficiency. *Can that person perform the jobs that you identified in response to questions 1 and 2?*
>
> A *No, sir. I wouldn't think so.* The training is going to have to be a bit more intense due to the brief training time allowed for entry-level work, so it's going to be really more in the frequent range of interaction with coworkers and supervisors. Plus, typically, after the initial orientation period, employers will typically place a more experienced

7

> work with the new hire, basically for all the time that they're working during the initial 30-day timeframe.

Tr. 75-76 (hearing transcript) (emphasis added).

The VE's testimony here–that someone who cannot tolerate more than occasional contact with supervisors and coworkers could *not* perform the previously identified jobs–is facially inconsistent with his prior testimony. *See* tr. 71-72. But the ALJ did not ask any follow-up questions or otherwise attempt to reconcile the VE's conflicting testimony at the hearing. *See generally* tr. 76-77 (hearing transcript). Nor did he address the VE's internally inconsistent testimony in his final decision. *See* tr. 31-32. The ALJ stated that he based his conclusion on the VE's testimony and that he credited the VE's testimony "[f]or any issues not addressed or otherwise appear to be inconsistent with the [DOT]." Tr. 31. He asserted that the VE testified that an individual with Friese's age, education, work experience, and RFC "would be able to perform the requirements of representative occupations such as" inspector and hand packager, inspector, and gluer, without acknowledging the VE's subsequent testimony to the contrary. *Id.*

When a VE "alters his initial testimony" regarding what kind of work a claimant might perform after cross-examination, his "equivocal

8

and contradictory" testimony "does not rise to the level of substantial evidence." *Jackson v. Richardson*, 449 F.2d 1326, 1330 (5th Cir. 1971)[3] (remanding for further proceedings to determine whether the claimant could engage in substantial gainful activity after the ALJ failed to reconcile the VE's contrary opinions on the issue). Before the ALJ may reasonably rely on a VE's contradictory testimony in his decision, he or she has a responsibility to explicitly resolve the conflicting statements. *Cf. id.*; *see also Kilgore v. Kijakazi*, 2021 WL 5759034, at *8 (M.D. Pa. Dec. 3, 2021) (recommending remand "where the Vocational Expert testified in a contradictory fashion and that contradiction was not acknowledged, addressed, and resolved by the ALJ"); *Lurry v. Comm'r of Soc. Sec.*, 2021 WL 4771269, at *9 (S.D. Ohio Oct. 13, 2021) (finding that substantial evidence did not support the ALJ's step five finding when "the VE's testimony was unclear as to whether Plaintiff could perform the relevant occupations, but the ALJ did not explain how she resolved the conflicts in the testimony").

To ensure that the final decision is supported by substantial

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

evidence, ALJs are often required to make specific statements or findings about how they weighed evidence or resolved conflicting evidence. "[W]hen the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,' [reviewing courts] will decline to affirm 'simply because some rationale might have supported the ALJ's conclusion.'" *Winschel*, 631 F.3d at 1179 (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)). For example, in considering medical evidence when determining a claimant's RFC, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor" because "'[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Id.* (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). Similarly, ALJs have an affirmative duty to identify apparent conflicts between the VE's testimony and the DOT, ask the VE about them, resolve them, and explain how the conflicts were resolved in the final decision. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1365 (11th Cir. 2019). If an ALJ fails to discharge this duty, his decision is not supported by substantial evidence. *Id.* at 1362.

Here, the VE offered conflicting testimony. When asked if there were "jobs in the national economy that would fit" a person with Friese's RFC, the VE said, "Yes, Your Honor. There are a good many entry-level, SVP2, light job titles consistent with the hypothetical." Tr. 71-72 (hearing transcript). But when Plaintiff's counsel later asked if a person with Friese's RFC could "perform the jobs that you identified," the VE said, "No, sir. I wouldn't think so." Tr. 75-76 (hearing transcript). The ALJ neither acknowledged that the VE offered conflicting testimony nor explicitly resolved the conflict. Tr. 31-32, 76-77 (hearing transcript). Because the ALJ characterized the VE's testimony as indicating that Friese *could* perform the requirements of an inspector and hand packager, inspector, and gluer, *see* tr. 31, the Court assumes the ALJ discredited the conflicting testimony elicited during counsel's examination. But the ALJ did not state that he was discrediting that portion of the VE's testimony, nor did he state his reasons for accepting the VE's initial conclusion as to the jobs someone with Friese's RFC could perform but rejecting the VE's subsequent conclusion to the contrary. *See generally* tr. 31-32. The Commissioner effectively concedes that the ALJ did not explain why he apparently discredited the VE's testimony that

11

Friese could not perform the earlier identified jobs in the final decision; though Commissioner offers his own explanation for why the VE's contrary testimony should be discarded, he does not *once* cite to the ALJ's decision in that section of its brief.  *See* doc. 13 at 7-8.

While an ALJ may rely solely on a VE's testimony in reaching his final decision, *Jones v. Apfel*, 190 F.3d 1224, 1230 (11th Cir. 1999), if that testimony is inconsistent, the ALJ's final decision should consider and resolve any inconsistencies.  *Cf. Jackson*, 449 F.2d at 1330 (remanding for further proceedings to determine whether the claimant could engage in substantial gainful activity after the ALJ failed to reconcile the VE's contrary opinions on the issue).  "In the absence of such a[n analysis], it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart*, 662 F.2d at 735.  Because the ALJ neither identified nor resolved the VE's conflicting testimony, nor did he explain why he apparently discredited the VE's conclusion that someone with Friese's RFC could not perform work as an inspector and hand packager, inspector, or gluer, the Court cannot conclude that the final decision was supported by substantial evidence and should not affirm.  For the reasons

set forth above, this matter should be **REMANDED** to the Social Security Administration for further proceedings under 42 U.S.C. § 405(g). *Cf. Jackson*, 449 F.2d at 1330. Because the Court recommends remand on this issue, it offers no opinion as to whether the ALJ erred in failing to classify her previous right calcaneus fracture as a severe impairment. *See Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1066 n.4 (11th Cir. 2021) (offering no opinion on all alleged errors where remand was required on other issues, but instructing on remand that "the ALJ is to reconsider [claimant's] claim based on the entire record").

## IV.   CONCLUSION

The "reviewing court [cannot] determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence" because the ALJ did not explicitly resolve the VE's conflicting testimony before relying on it to conclude that Friese could work as an inspector and hand packager, inspector, or gluer. *Cowart*, 662 F.2d at 735. Therefore, the ALJ's decision should be **REMANDED** for further proceedings consistent with these recommendations. This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local

Rule 72.3. Therefore, within 14 days from the date of this order, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this 6th day of February, 2024.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

14